# In the United States Court of Federal Claims

No. 22-3

(Filed under seal: March 24, 2022)

(Reissued:  March 31, 2022)

|  |  |  |
|---|---|---|
| **GRITTER FRANCONA, INC.,** | ) | Post-award bid protest; evaluation of technical factors and past performance; best value determination |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| **v.** | ) | |
|  | ) | |
| **UNITED STATES,** | ) | |
|  | ) | |
| Defendant, | ) | |
| **and** | ) | |
|  | ) | |
| **GC ASSOCIATES, LLC,** | ) | |
|  | ) | |
| Defendant-Intervenor. | ) | |
|  | ) | |
|  | ) | |

Douglas P. Hibshman, Fox Rothschild LLP, Washington, D.C., for plaintiff.  With him on the briefs was Nicholas T. Solosky, Fox Rothschild LLP, Washington D.C.

Liridona Sinani, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With her on the briefs were Brian M. Boyton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice.  Of counsel were Bradley E. Richardson and Jason R. Smith, Associate General Counsel, Office of General Counsel, Defense Health Agency.

Maria L. Panichelli, Obermayer Rebmann Maxwell & Hippel LLP, Philadelphia, PA for defendant-intervenor.  Of counsel was Karen Douglas, Obermayer Rebmann Maxwell & Hippel LLP, Philadelphia, PA.

# OPINION AND ORDER[1]

LETTOW, Senior Judge.

In this post-award bid protest, plaintiff Gritter Francona, Inc. ("Gritter Francona") challenges an award by the Defense Health Agency ("DHA or agency") under Request for Proposal No. HT001120R0003 ("the solicitation"), in a procurement to obtain management support for various programs related to disabled, injured, or ill military service members.  Gritter Francona alleges DHA violated federal regulations and the solicitation's requirements, resulting in an improper award to Defendant-Intervenor GC Associates, LLC ("GCA").  Gritter Francona has filed a motion for judgment on the administrative record as well as for a permanent injunction.  *See* Pl.'s Mot. for Judgment on the Administrative Record ("Pl.'s Mot."), ECF No. 21-1.  Defendant United States ("the government") and awardee GCA have submitted cross-motions.  *See* Def.'s Corrected Cross-Mot. for Judgment on the Administrative Record ("Def.'s Cross-Mot."), ECF No. 28; Def.-Int.'s Cross-Mot. for Judgment on the Administrative Record ("Def.-Int.'s Cross-Mot."), ECF No. 23.[2]  The case is fully briefed, *see* Pl.'s Resp. and Reply, ECF No. 30; Def.'s Reply, ECF No. 31; Def.-Int.'s Reply, ECF No. 32, and a hearing was held March 17, 2022.

For the reasons stated, the court DENIES Gritter Francona's motion for judgment on the administrative record and GRANTS defendants' cross-motions.  Gritter Francona's motion for a permanent injunction is DENIED AS MOOT.

## BACKGROUND[3]

### A.  *The Solicitation*

On May 13, 2020, DHA issued solicitation HT001120R0003 as a small business set aside.  AR 4-13.[4]  The solicitation sought to grant a "single-award firm fixed price (FFP)

---

[1] Because of the protective order entered in this case, this opinion was initially filed under seal.  The parties were requested to review the decision and provide proposed redactions of any confidential or proprietary information.  The resulting redactions are shown by ellipses enclosed by brackets, *e.g.*, "[***]."  Not all proposed redactions were accepted.

[2] The government initially filed its cross-motion on February 18, 2022, *see* ECF No. 22, but later moved to amend its cross-motion to correct typographical errors, *see* Def.'s Mot. to Amend Cross-Motion, ECF No. 26, which the court granted, *see* Order of March 2, 2022, ECF No. 27.

[3] The recitations that follow constitute findings of fact by the court from the administrative record of the procurement filed pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC").  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

definitive contract for services with fixed unit prices" to "provide support to the Deputy
Assistant Secretary of Defense (DASD) for Health Services and Policy Oversight (HSP&O) and
the Director, [DHA], in their missions of policy and program development and oversight" for
several military disability related components.  AR 3-11; 4-94.[5]  Additionally, the awardee
would be responsible for providing "administrative and records management support to the DHA
office."  AR 4-94.  The goal of the solicitation was to "matur[e] existing programs through
continuous improvement" to "facilitate the Military Departments' integrated delivery of services
and benefits for wounded, injured and ill [s]ervice members."  AR 3-11.  A one-year base period
of performance would be followed by four one-year option periods and the potential for a six-
month extension period.  AR 3-11.  The market value research report estimated the value of the
base contract with the four options to be $44,512,656.  AR 1-1.

        The procurement was to be conducted under Federal Acquisition Regulation ("FAR")
Part 15 and FAR Part 12.  AR 3-11.[6]  FAR § 52.212-2 was also incorporated, and the solicitation
appended instructions to that regulation, requiring "the [g]overnment [to] determine the offer that
represent[ed] the best value by performing [a] trade-off analysis."  AR 39-2615.  Best value was
equated to the offer "most advantageous to the [g]overnment, price and other factors
considered."  AR 4-69.  The solicitation required a trade-off analysis of three factors: (1)
technical, which consisted of five subfactors, (2) past performance, and (3) price.  AR 4-69.
The technical factor was more important than past performance, but combined, those two factors
together were more important than price.  Price, however, would rise in importance "[a]s the
range of technical merit narrow[ed]."  AR 4-69.

        The overall technical factor was to receive a rating of outstanding, good, acceptable,
marginal, or unacceptable based on the ratings of its subfactors.  AR 4-70 to 71, 73.  The five
subfactors of the technical factor were: (i) technical approach, (ii) key personnel, (iii) transition
plan, (iv) quality control approach, and (v) limitations on subcontracting.  AR 4-69.  Of the
subfactors, technical approach was the most important because "it [was] the only subfactor that
c[ould] contribute to a [g]ood or [o]utstanding rating" for the overall technical factor, while the
other subfactors could not be rated above acceptable.  AR 4-69.  As relevant to this protest, good
was defined as a "[p]roposal [that] indicate[d] a thorough approach and understanding of the
requirements and contain[ed] at least one [s]trength, and risk of unsuccessful performance [was]
low to moderate."  AR 39-2618.  A technical offer would receive an acceptable rating if the
"[p]roposal [met] requirements and indicate[d] an adequate approach and understanding of the

_____

        [4] The administrative record filed with the court in accord with RCFC 52.1(a) is divided
into tabs and is consecutively paginated.  The record will be cited by tab and page, *e.g.*, "AR __ -
___."

        [5] The programs and entities specifically outlined in the solicitation were: the Disability
Evaluation System, the Special Compensation for Assistance with Activities of Daily Living, the
Physical Disability Board of Review, and the Compensation and Benefits Handbook.  AR 4-94.

        [6] The solicitation was amended three times prior to the award, in respects not material to
this protest.  *See* AR 6-172 to 230; 37-2535 to 2549; 39-2602 to 2626.

requirements, and risk of unsuccessful performance [was] no worse than moderate." AR 39-2618.

To evaluate the technical approach subfactor, the agency was to consider "the adequacy of the work force size, in terms of labor hours, and adequacy of workforce skill mix to perform the full scope of work." AR 39-2615. It was also to consider "the degree to which the offeror's technical approach demonstrate[d] understanding of" nine key tasks listed in the solicitation. AR 39-2615 to 2616. In making this evaluation, the agency could assign a label of strength, weakness, significant weakness, or deficiency to any aspect of a proposal; the strength rating, however, could only be assigned to an aspect of the technical approach subfactor. AR 39-2615, 2618. A strength was defined as "[a]n aspect of an offer[or]'s proposal that ha[d] merit or exceed[ed] specified performance or capability requirements in a way that w[ould] be advantageous to the [g]overnment during contract performance." AR 39-2618. After making that evaluation, an adjectival rating of unacceptable to outstanding was to be assigned to the subfactor. AR 39-2615, 2618.

The past performance factor was to be evaluated based on information from the proposals and "information obtained from other sources." AR 39-2618.[7] The agency was to consider recency and relevance of the past performance when making its determination. AR 39-2618.[8] Relevancy of a past performance was to be determined by reviewing the "size, scope and complexity of each recent past performance effort and determin[ing] its similarity to the services described" in the solicitation. AR 39-2618. Each past performance effort was to receive a rating of very relevant, relevant, somewhat relevant, or not relevant. AR 39-2619. Somewhat relevant was defined as a "[p]resent/past performance effort [that] involved some of the scope and magnitude of effort and complexities this solicitation require[d]." AR 39-2619.[9] Where a past effort received any rating other than not relevant, the agency was to review it "for favorable and adverse findings describing the quality of the services performed." AR 39-2619.

After that review, the overall past performance factor was to receive a rating of satisfactory confidence, neutral confidence, limited confidence, or no confidence. Neutral confidence was defined as "no recent/relevant performance record [was] available or the

---

[7] The other sources included but were not limited to the Past Performance Information Retrieval System, the Federal Awardee Performance and Integrity Information System, the Electronic Subcontract Reporting System, the Defense Contract Management Agency, interviews with program managers, contracting officers, and fee determining officials, and other databases. AR 39-2618.

[8] A past performance effort would receive a rating of either recent or not recent. AR 39-2618. A recent performance was defined as "those [efforts] performed as a prime contractor or as a subcontractor within the last three years from release of this solicitation, including efforts currently being performed." AR 39-2618. Recency is not being challenged for any proposal.

[9] In an Answers to Questions attachment incorporated in the solicitation, the agency further explained that "the [s]omewhat [r]elevant rating . . . provide[d] flexibility to consider efforts that might not otherwise meet a strict application of relevance criteria." AR 6-226.

offeror's performance record [was] so sparse that no meaningful confidence assessment rating
c[ould] be reasonably assigned. The offeror may not be evaluated favorably or unfavorably on
the factor of past performance." AR 39-2619. A rating of limited confidence was to be assigned
if "[b]ased on the recent/relevant performance record, the [g]overnment ha[d] a low expectation
that the offeror w[ould] successfully perform the required effort." AR 39-2619. An offer that
received a rating of limited confidence or no confidence was automatically to be excluded from
consideration for the award. AR 39-2620.

Lastly, price was to be evaluated separately from the other two factors for whether it was
fair and reasonable. AR 39-2619. To make its determination, the agency was to compare the
"proposed price to the market price derived from market research or from adequate price
competition." AR 39-2619.

After making the above evaluations, a trade-off analysis was to be conducted to "compare
the meaningful differences in ratings of factors other than price, in total, to the differences in
prices." AR 39-2620. The analysis was to begin by considering differences under the technical
factor (which was to be "distinguished by the [t]echnical [a]pproach subfactor rating, [if] all
other subfactors [were] [a]cceptable") and the past performance factor, and then price. AR 39-
3620. If a determination could not be made after that comparison, the agency could look to any
other "adverse evaluation comments" under the technical subfactors, excluding key personnel.
AR 39-2620. After the analysis, an award was to be made to the offer with the best value. AR
39-2615. Best value would be determined by "compar[ing] one [offer] to another until one offer
[was] found to be a better value than every other offer." AR 39-2620.

### B. The Proposals & Source Selection Evaluation Board's Evaluations

A total of twelve proposals were received in response to the solicitation. AR 62-3931.
One proposal was rejected prior to evaluation for failing to meet material requirements, but the
remaining proposals were evaluated by the Source Selection Evaluation Board ("SSEB"). *See*
AR 20-2092; AR 34-2495 to 2496. Gritter Francona's proposal included its own experience and
that of [***] and [***], which would act as subcontractors on the award. [***] has performed
the same work sought under the solicitation for the last several years and is the prime incumbent.
*See* Pl.'s Mot. at 9; AR 13-1394 to 1396. Both Gritter Francona and [***] have served as
subcontractors for [***] for multiple years. Pl.'s Mot. at 9. Gritter Francona's proposal
contained a five-step model for data quality. AR 29-2342.[10] For its initial review, the SSEB
assessed Gritter Francona's overall technical proposal as good, giving it no weaknesses and one
strength in the technical approach subfactor for its "approach to use automated solutions to
ensure data quality." AR 29-2342. All other subfactors received an acceptable rating. AR 29-
2345 to 2356. Gritter Francona's proposal also received a rating of satisfactory confidence for
past performance. AR 29-2366.

---

[10] These steps included: (1) the identification of errors, (2) determination of logic checks,
(3) work with stakeholders, (4) follow up and escalate errors, and (5) report on status of error
resolution. AR 29-2342.

In contrast, the SSEB initially assigned an unacceptable rating to GCA's technical proposal.  AR 27-2258.  The SSEB assigned a weakness to GCA's proposal for failing to "demonstrate [an] understanding of the labor mix and level of effort necessary to perform the full scope" of the solicitation.  AR 27-2261.  As for its data quality approach (the aspect for which Gritter Francona received a strength), GCA proposed a four-step plan for data quality management and would "develop automatic quality checking applications," which the SSEB determined met the solicitation requirements.  AR 27-2266 (internal quotations omitted).  The SSEB further gave GCA a rating of limited confidence for past performance.  AR 27-2289.  The SSEB determined that the five recent past performances provided by GCA were only somewhat relevant because "none of the efforts were as large in scope as the [s]olicitation outline[d]" despite showing "excellent or exceptional performance."  AR 27-2290 (internal quotations omitted).  No adverse ratings were noted.  Def.'s Cross-Mot. at 11; AR 27-2283 to 2291.  The SSEB concluded that GCA's past performance did not "demonstrate an expectation . . . [of] successful completion of the contract.  AR 27-2290.

Following the initial evaluations, the contracting officer determined it was necessary to establish a competitive range and to engage in discussions.  AR 34-2495.  Considering that only two of the eleven proposals received acceptable or better ratings, the contracting officer amended aspects of the key personnel subfactor and the evaluation of professional employee compensation.  AR 34-2495.  He also noted that he disagreed with the SSEB's past performance ratings for GCA and another offeror.  AR 34-2495.  As to GCA's past performance, the contracting officer stated that the SSEB's rating "amount[ed] to evaluation of experience and not past performance, so the correct rating should [have been] [n]eutral [c]onfidence."  AR 34-2502.  The contracting officer established a competitive range of nine offerors, excluding the two offerors with the lowest prices.  *See* AR 34-2503.

After the submission of final proposal revisions, the SSEB reevaluated the technical proposals.  The SSEB maintained its evaluation of Gritter Francona (which had made no changes to its proposal), leaving intact the prior good rating in the technical factor and strength attributed to Gritter Francona's five-step approach for data quality management.  AR 56-3858.  The reevaluation resulted in one other offeror receiving a good rating for its technical factor after being assessed a strength for offering "a lawyer with healthcare legislative and lobbying expertise."  AR 62-3934.  Six other offerors, including awardee GCA, received acceptable ratings in all technical subfactors and therefore an acceptable rating for the technical factor itself.  AR 62-3933.  The SSEB did not reevaluate past performance.

## C.  The Source Selection Authority's Evaluations

The SSEB's final evaluations were then reviewed by the contracting officer in his role as Source Selection Authority ("SSA").  AR 62-3931 to 3955.  The SSA reviewed the solicitation and amendments, the non-price factor evaluations by the SSEB, the price analysis report, and all proposals.  AR 62-3931.[11]

---

[11] The SSA determined that each proposal contained a fair and reasonable price.  AR 61-3930.  This determination is not being challenged, and the court does not review it.

In reviewing GCA's proposal and SSEB evaluation, the SSA determined that GCA should have received a past performance rating of neutral confidence as opposed to the limited confidence it had been given by the SSEB. AR 62-3941 to 3942. The SSA agreed with the SSEB that the provided past performance examples were somewhat relevant. AR 62-3941. The SSA noted, however, that the SSEB's evaluation "was based on experience," which was "not an evaluation criteri[on]." AR 62-3941. The SSA determined that "in the absence of [adverse reports of past performance], the lack/spars[e] amount of relevant past performance [should be] properly rated as [n]eutral [c]onfidence." AR 62-3942. The SSA made a similar determination for one other offeror, [***], raising its past performance rating from limited confidence to neutral confidence. AR 62-3935.

While the SSA left Gritter Francona's past performance evaluation intact, its technical evaluation was downgraded. The SSA determined that Gritter Francona's proposal did not demonstrate the strength assigned to it by the SSEB. AR 62-3944. Rather, he stated that "each offeror ha[d] an approach that identifies errors . . . . When I look back at the value of the assigned [s]trength and then across . . . all the technical proposals I am not seeing this as a [s]trength." AR 62-3944. Because the SSA removed the strength assigned to Gritter Francona, its technical rating dropped from good to acceptable because a good rating required "at least one [s]trength." AR 39-2618; AR 62-3945. The SSA also removed a strength and thereby downgraded the technical rating of [***], which had been given a strength for having an attorney on its team, resulting in all proposals receiving an acceptable rating. AR 62-3934; 3948.[12]

The SSA then engaged in a trade-off analysis by first comparing the two lowest priced offers, selecting the one with the perceived better value, and then continuing through a process of addressing each of the other proposals. AR 62-3949. This approach resulted in GCA's proposal being compared against the other proposals in the competitive range, including Gritter Francona. AR 62-3948 to 3955. In the comparison of GCA and Gritter Francona, the SSA noted that he had removed a strength from Gritter Francona, stating that "[a]ll offeror[]s proposed a similar approach with an acceptable level of detail." AR 62-3952. Beyond that, the SSA determined GCA's "work force size to be a more efficient use of labor." AR 62-3953. The SSA discussed the differences in past performance, again noting that in his view the SSEB improperly considered "experience" when evaluating GCA and determined GCA to be "adequately qualified." AR 62-3953. GCA had a proposed price of $26,188,214.40. AR 62-3948. In comparison, Gritter Francona had a proposed price of $33,405,351.69. AR 62-3948. Ultimately, the SSA did not find "Gritter Francona's technical proposal and more relevant past performance

---

[12] In the source selection document, the SSA generated two charts summarizing the evaluations of the factors and subfactors for each offeror. One represented the SSEB's determinations, *see* AR 62-3933, and the other summarized the SSA's findings, *see* AR 62-3948. Despite removing the strength assigned to Gritter Francona and [***] under the technical approach factor, the latter chart still denotes Gritter Francona and the other offeror as having an adjectival rating of "good" under the technical approach subfactor. AR 62-3948. This is inconsistent with the solicitation's definition of "good" which required at least one strength. AR 39-2618. The chart should have reflected an "acceptable" rating under the technical approach subfactor. This discrepancy does not affect the court's analysis.

having value to offset[] the $7,217,137.29 higher price, a 27.6% difference" and found GCA to represent the best value to DHA.  AR 62-3953; 3955.

### D.  The GAO Protest

Gritter Francona, on September 22, 2021, filed a protest at the Government Accountability Office ("GAO").  AR 77-5063 to 5171.[13]  It contended that DHA improperly evaluated the technical proposals of the nine offerors in the competitive range, converting the procurement from a best value procurement to a lowest price technically acceptable ("LPTA") procurement.  AR 77-5071.[14]  It also alleged that the SSA's evaluation of its technical approach was arbitrary and capricious because it ignored its subcontractor (and the prime incumbent) Booz Allen Hamilton's experience and unfairly removed the strength assigned to it by the SSEB.  AR 77-5073 to 5084.  Lastly, Gritter Francona claimed that the SSA did not comply with the terms of the solicitation by improperly emphasizing price over past performance.  AR 77-5086 to 5087.

On October 22, 2021, DHA responded with its agency report, explaining that it properly evaluated all proposals and acted consistently with the requirements of the solicitation.  AR 82-5217 to 5255.  Gritter Francona filed its comments to the agency report and a supplemental protest attacking the evaluation of GCA's past performance on November 1, 2021.  AR 84-6360 to 6376.  After briefing, the GAO denied and dismissed Gritter Francona's protest on December 22, 2021.  AR 91-6438 to 6445.  The GAO found the technical evaluation to be reasonable.  AR 91-6441 to 6442.  Particularly, the GAO dismissed the allegation that the action itself of removing a strength was impermissible and, on the merits, determined that the SSA performed a qualitative analysis and reasonably removed the strength assigned to Gritter Francona.  AR 91-6442 n.1 to 6443.  The GAO further found the allegations regarding the re-evaluation of GCA's past performance to be untimely.  AR 91-6443.  The GAO noted that the SSA had determined it was improper to consider experience when evaluating past performance and that any rated advantages given to Gritter Francona's proposal did not offset the "substantially (27.6 percent) higher price."  AR 91-6445.  As a result, the GAO found the SSA's tradeoff analysis to be "reasonable, well-documented, and consistent with the evaluation criteria."  AR 91-6445.

### E.  This Protest

Gritter Francona filed this bid protest on January 4, 2022.  *See* Compl., ECF No. 1.  GCA intervened in the case on January 6, 2022.  *See* Order of January 6, 2022, ECF No. 11.  Gritter Francona has moved for judgment on the administrative record, claiming that the SSA arbitrarily and capriciously evaluated the non-price factors, improperly converted the procurement to a LPTA methodology, and conducted an improper best-value trade-off analysis.  *See generally* Pl.'s Mot.  It also seeks a permanent injunction.  *Id.*  In response, defendants seek judgment in

---

[13] This protest was not mentioned in either Gritter Francona's motion or its response and reply.

[14] Analytical Planning Programming Policy and Strategic Integration, LLC, a fellow rejected bidder, also filed a protest on the same grounds at GAO.  AR 67-3982 to 5060.  GAO rejected the argument and found the evaluation reasonable.  AR 75-5055 to 5060.

their favor on the administrative record, contending that the SSA acted appropriately and consistently with the solicitation.  *See generally* Def.'s Cross-Mot. and Def.-Int.'s Cross-Mot.[15]

## STANDARDS FOR DECISION

The standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, govern the court's consideration of a protest of the government's decision regarding the award of a contract. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").  Under the APA, the court may set aside a government procurement decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004); *Hyperion*, *Inc. v. United States*, 115 Fed. Cl. 541, 550 (2014).  "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (brackets omitted) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

The court may not "substitute its judgment for that of the agency," *Hyperion*, 115 Fed. Cl. at 550 (quoting *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (in turn quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds as recognized in Califano v. Sanders*, 430 U.S. 99, 105 (1977))), but "must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion,'" *id.* (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)).  This is so even if the clarity of the agency's decision is "less than ideal," so long as "the agency's path may reasonably be discerned."  *Federal Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).  "'[T]he deference afforded to an agency's decision must be even greater when a trial court is asked to review a technical evaluation' because of the highly specialized, detailed, and discretionary analyses frequently conducted by the government."  *CSC Gov't Sols. LLC v. United States*, 129 Fed. Cl. 416, 434 (2016) (quoting *L-3 Commc'ns EOTech, Inc. v. United States*, 83 Fed. Cl. 643, 650 (2008)) (additional citations omitted).

The court may overturn the government's procurement decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In conducting the rational-basis analysis, the court looks to "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333), and affords "contracting officers . . . discretion upon a broad range of issues," *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018) (quoting

---

[15] GCA's cross-motion adopted and incorporated the facts and arguments of the government's motion without adding argument of its own.  *See* Def.-Int.'s Cross-Mot.

*Impresa Construzioni*, 238 F.3d at 1332-33).  Accordingly, "the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis."  *Centech*, 554 F.3d at 1037 (quoting *Impresa Construzioni*, 238 F.3d at 1332-33).  Protests alleging a violation of regulation or procedure "must show a clear and prejudicial violation."  *Axiom*, 564 F.3d at 1381 (quoting *Impresa Construzioni*, 238 F.3d at 1333).

## ANALYSIS

### A.  The Technical Evaluation

Gritter Francona contends that DHA committed prejudicial error via the SSA's evaluation of Gritter Francona's technical proposal when he removed a strength given to it by the SSEB.  *See* Pl.'s Mot. at 2-3.  Gritter Francona proposed a five-step data quality management plan.  AR 29-2342.  The SSEB, when evaluating the technical approach subfactor, determined that this aspect of the proposal "ha[d] merit or exceed[ed] [the] specified performance or capability requirements."  AR 29-2342; 39-2618.  Gritter Francona contends that the SSEB's determination was a correct evaluation of its proposal, and that the SSA committed procurement error by removing the strength, resulting in Gritter Francona's proposal being downgraded to "acceptable."  *See* Pl.'s Mot. at 25-26.  Defendants counter that the SSA made a reasonable determination that Gritter Francona's proposal did not warrant a strength but was acceptable under the definitions set out in the solicitation.  *See* Def.'s Cross-Mot. at 22-32.

An agency's procurement decisions are entitled to "highly deferential rational basis review," which requires a "reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotations omitted) (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)).  Certainly "[a]n offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably."  *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 384 (2003).  While Gritter Francona may believe that the SSEB's evaluation was the correct one, the SSA is the ultimate decision-making authority for the agency.  In reaching a decision, the SSA may use reports prepared by the SSEB and others, but the SSA is ultimately obligated to use independent judgment, FAR § 15.308, and "is not limited to the recommendation of the SSEB."  *EFW, Inc. v. United States*, 148 Fed. Cl. 396, 411 (2020).  The SSA's decision not to adopt the SSEB's recommendations is not itself procurement error.

Part of the SSA's obligation to exercise independent judgment is to conduct a qualitative analysis, which Gritter Francona alleges the SSA failed to properly do.  Pl.'s Mot. at 24.  The government contends the SSA did conduct and document a thorough analysis.  Def.'s Cross-Mot. at 29-32.  In a twenty-five-page source selection decision, the SSA reviewed the SSEB's evaluation for each offeror and made individual findings based on his independent judgment.  AR 62-3931 to 3955.  In the decisional document, the SSA described and reviewed Gritter Francona's proposal, acknowledging that Gritter Francona had been given a strength for its "five-step model for identifying and resolving data errors."  AR 62-3944.  The SSA came to the conclusion that the proposal did not warrant a strength.  Importantly, he supported that determination with references to the solicitation and the other proposals.  AR 62-3944.  As the

SSA noted, the solicitation had a base requirement that an offeror present a "comprehensive plan to identify data quality errors," which is what the SSA determined the five-step plan satisfied. AR 62-3944. When evaluating Gritter Francona's proposal, the SSA determined it presented a "top level basic understanding of what to expect out of each process," especially considering the other proposals similarly presented multi-stepped approaches. AR 62-3944. The solicitation's definition of a strength required that an aspect of the proposal "exceed[] . . . [the] capability requirements." AR 39-2618. The SSA determined that Gritter Francona's proposal met the solicitation's requirements, but it did not exceed the requirements to merit a strength. AR 62-3944.

A review of the other proposals confirms the SSA's finding that other proposals similarly offered multi-stepped plans. *See, e.g.*, AR 42-2873; 45-3395 to 3397. In the agency report filed at the GAO, the SSA stated that when reviewing the other proposals' similar approaches (which had not been given a strength by the SSEB), he determined the "strength was being unequally applied." AR 82-5234.[16] Gritter Francona contends that "[t]he SSA did not evaluate the specific benefits of accuracy, speed, and efficiency identified by the SSEB" that differentiates it from the others. Pl.'s Mot. at 24. Nonetheless, although the SSA did not specifically outline such a comparison in the decisional document, such specificity is not required. *See DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1315 (Fed. Cir. 2021). An agency need not provide an "explicit explanation" as to its reasoning so long as its "decisional path is reasonably discernible." *Id.* (internal quotations omitted) (quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998)). The SSA thoroughly documented his evaluation and determinations in the source selection document, AR 62-3931 to 3955, as well as at GAO, which agreed with the reasonableness of the SSA's decision, AR 91-6442 to 6443.

Gritter Francona also contends that the SSA first "agreed with the SSEB's findings and initially deemed [Gritter Francona's] [t]echnical proposal . . . to be the 'most favorably rated' and the 'better value'" and therefore arbitrarily changed his position. Pl.'s Mot. at 19-20. This is a mischaracterization of the record. Those initial statements were made during the determination to establish a competitive range and were accompanied with the caveat that "no formal trade-off analysis [was] complete." AR 34-2495 to 2496. The cited statements thus do not constitute an actual finding of technical superiority or provide evidence of procurement error.

Lastly, Gritter Francona argues that the SSA failed to properly account for the superior technical advantage that comes from Gritter Francona's relationship with [***] and [***], which would be serving as subcontractors for Gritter Francona. Pl.'s Mot. at 25-26. But an agency is "not required to give 'extra credit' for incumbency." *United Concordia Cos., Inc. v. United States*, 99 Fed. Cl. 34, 45 (2011) (quoting *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 208-09, (2004) *aff'd*, *PGBA, LLC*, 389 F.3d 1219). Gritter Francona's relationship with [***] does not

---

[16] The strength was assigned to Gritter Francona's technical proposal in part for using "automated solutions." AR 56-3858. But a strength was not assigned to other proposals that had automated aspects of their data quality plans. *See* AR 44-2388; AR 45-3397.

automatically warrant a finding of a higher technical rating.[17]  The SSA determined that Gritter Francona's proposal met the solicitation requirements and was acceptable.  AR 62-3944.  It was not required to go beyond that merely because the prime incumbent was included on the offer.

The SSA thoroughly documented that he reviewed and evaluated the proposals using his own judgment.  *See* AR 62-3931 to 3955.  GAO similarly found that the SSA had "qualitatively assessed" the proposals and acted consistently with the law and solicitation.  AR 91-6443.  The SSA came to a reasonable conclusion that proposals of a similar type met the requirements of the solicitation.  He was not bound by the SSEB's conclusion and came to a reasonable and readily discernible conclusion.  The court will not second guess it.

### B.  The Past Performance Evaluation

The past performance factor under the solicitation allowed offerors to submit up to five past performance efforts which would be evaluated for recency and relevancy.  An offeror would then receive a confidence rating in the overall factor.  AR 39-2618 to 2619.  A neutral confidence rating contemplated a finding that an offeror had too "sparse" of a history to make a confidence determination whereas a limited confidence rating was to be given when there was a "low expectation" of successful performance.  AR 39-2619.  Gritter Francona argues that the SSA acted arbitrarily and capriciously when he determined GCA's past performances warranted a rating of neutral confidence as contrasted to the limited confidence rating it received from the SSEB.  Pl.'s Mot. at 26-33.  Defendants contend that GCA's past performances were somewhat relevant and uniformly positive, making it reasonable for the SSA to give a neutral confidence rating to GCA.  Def.'s Cross-Mot. at 33-38.

The primary source of the parties' disagreement is the role of experience and the relevancy rating in making the past performance confidence evaluation.  Gritter Francona alleges that the experience presented in GCA's proposal prevents it from receiving a neutral confidence rating.  Pl.'s Mot. at 29-31.  The government contends that the SSA properly gave that rating to GCA because the confidence rating is quality-focused while relevancy alone is concerned with experience.  Def.'s Cross-Mot. at 35-37.  The record reflects that experience was an appropriate consideration for the SSEB when it was deciding whether an effort was relevant, but the solicitation limited the determination of confidence to the "quality" of a performance.  *See* AR 39-2619.  The SSA thoroughly outlined in the source selection document that while GCA's experience was small in comparison, all the provided efforts had notably positive rankings.  AR 62-3941 to 3942.

The "[e]valuation of experience and past performance, by its very nature, is subjective and an offeror's mere disagreement with an agency's evaluation judgments does not demonstrate that those judgments are unreasonable."  *Science & Mgmt. Res., Inc. v. United States*, 117 Fed. Cl. 54, 65-66 (2014) (internal alterations and citation omitted).  While Gritter Francona may disagree with the SSA's determination, it is not inconsistent with the solicitation.  The

_____

[17] Further, the reversal of roles from Gritter Francona's being [***]'s subcontractor to the opposite to qualify for this small business set aside points to an inconsistency with the purpose of small business set aside contracts.

solicitation provided that experiences rated as somewhat relevant were to be reviewed for findings "describing the quality of the services." AR 39-2619. It further stipulated that "[i]n the case of an offeror without a record of *relevant* past performance or for whom information on past performance is . . . so sparse [,] . . . no meaningful past performance rating can be reasonably assigned." AR 62-2619 (emphasis added). GCA did not receive a rating beyond *somewhat* relevant, and the SSA determined that the quality of GCA's past performances offset the discrepancy in size that resulted in the somewhat relevant rating. AR 62-3943 to 3942. Where quality was the crux of the confidence rating, *see* AR 39-2619, the SSA was within his discretion to determine that GCA's positive, but only somewhat relevant, efforts warranted a neutral confidence rating because the balance of the relevancy and confidence ratings rendered GCA's record sparse, and he was unable to assign a "*meaningful* past performance rating." AR 39-2619 (emphasis added).

Gritter Francona argues that a limited confidence rating was required by the solicitation. Pl.'s Mot. at 33. This interpretation is not consistent with the solicitation. Gritter Francona's interpretation of the solicitation would require placing double emphasis on relevancy and experience while downgrading the importance of quality. Such an approach is inconsistent with this court's preference for an "interpretation [of the solicitation] that gives a reasonable meaning to all parts of the solicitation [as contrasted] to one that leaves portions of the solicitation meaningless." *Overstreet Elec. Co., Inc. v. United States*, 59 Fed. Cl. 99, 112 (2003). The administrative record shows that DHA contemplated the somewhat relevant category as serving a catch-all purpose. When an offeror asked whether an intermediate confidence rating could be added to avoid the situation where "an offeror with neither recent nor relevant past performance would score higher than an offeror with either recent or relevant past performance," the agency responded that the somewhat relevant rating provided the necessary "flexibility" for efforts that "might not otherwise meet a strict application of relevance criteria." AR 6-226. The text of the solicitation, DHA's responses to questions, and commonsense convey that it was not impermissible for the SSA to balance GCA's favorable performance in terms of quality against its only somewhat relevant experience, leading to a rating of neutral confidence. It would misapply the text of the solicitation to require an offeror with somewhat relevant and positive ratings to receive a lower confidence rating (and consequently be excluded from the competition) while an offeror with *no* relevant or recent efforts would receive a higher rating and remain in the competition. The SSA's determination was reasonable, consistent, and readily discernible. *DynCorp Int'l, LLC*, 10 F.4th at 1311. The court will not disturb it now.

Gritter Francona further argues that even if the SSA's determination was appropriate, the SSA nonetheless acted arbitrarily and capriciously by unfairly correcting the SSEB's improper reliance on experience for GCA's evaluation while not correcting it for the other offerors. Pl.'s Resp. & Reply at 10-12. But the change from limited to neutral confidence was not limited to GCA. The SSA made the same change for another offeror, [***]. The SSEB gave [***] a limited confidence rating due to its receiving four ratings of somewhat relevant. AR 23-2138 to 2140. The SSA changed this rating to neutral confidence, agreeing that the past performance efforts were somewhat relevant but noting that there were no adverse reports and that the information available as to the offeror was "limited." AR 62-3935. That the SSA made the same change illustrates the consistency of his approach and belies accusations of unfair preference towards GCA due to its lower price. Gritter Francona further points to the SSEB's

references to experience in the evaluations of six other offerors which the SSA did not disturb. Pl.'s Resp. & Reply at 11-12. Gritter Francona fails to consider that the SSA's own evaluation does account for experience in the appropriate way. It is not that experience was not a factor—it was necessarily a consideration of the relevancy subfactor—but rather that experience was not the ultimate consideration regarding past performance. For each of the six offerors Gritter Francona identified, the SSA addressed the quality of each of the performances, noting that each had "favorable performance findings" and that no negative past performance findings were generated from the outside sources of information. AR 62-3935 to 3948.

To show disparate treatment, a protestor must show that "the agency inconsistently applied objective solicitation requirements between [the protestor] and other offerors." *Office Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020). Gritter Francona has not shown that the SSA inconsistently applied the criteria (particularly where it is inherently subjective), and the SSA explicitly documented his reasoning and evaluations in the twenty-five-page source selection decisional document.

## C. Best Value Trade-Off Analysis

The solicitation required that an award be made to the offeror whose proposal would "be the most advantageous to the [g]overnment, price and other factors considered," AR 4-69; in short, the award was to be given to the proposal that represented the best value. Gritter Francona alleges that DHA impermissibly converted the procurement from a best value analysis to a lowest price technically acceptable ("LPTA") methodology. Pl.'s Mot. at 34-36. A best value procurement is focused on obtaining "the expected outcome of an acquisition that, in the [g]overnment's estimation, provides the greatest overall benefit in response to the requirement." FAR § 2.101. In contrast, a LPTA methodology looks for the lowest price for a technically sufficient offer. *See* FAR § 15.101-2.

First, Gritter Francona contends that the SSA treated the procurement as a LPTA method by considering only whether the technical approaches of the offerors were "sufficient" or "adequate." Pl.'s Mot. at 35-36. This is a mischaracterization of the SSA's decision. In his decision, the SSA engages in a discussion of the labor and work-force allocation of each technical proposal. *See* AR 62-3931 to 3955. The fact that the SSA stripped Gritter Francona of a strength because it determined that it did not exceed the requirements of the solicitation does not convert it to an improper LPTA analysis. As discussed above, the SSA was within his discretion to remove the strength awarded by the SSEB, and he properly documented that decision. Simply because the SSA determined all the proposals to be sufficient to satisfy the solicitation requirement does not mean he failed to engage in an analysis otherwise documented in the record and the source selection decisional document. In particular, Gritter Francona points to the use of the term "adequate" to describe GCA and the other proposals. Pl.'s Mot. at 35-36. Yet, the definition of "acceptable" outlined in the solicitation specifically states that an acceptable proposal is one that "indicates an *adequate* approach." AR 39-2618 (emphasis added). The use of such terms is consistent with the solicitation itself. While Gritter Francona alleges that the SSA failed to sufficiently describe and compare the various proposals, *see* Pl.'s Resp. & Reply at 18-19, the SSA's analysis was more than sufficient, *see DynCorp Int'l*, 10 F.4th at 1305 (holding that an agency need not provide an "explicit explanation" as to its

reasoning so long as its "decisional path is reasonably discernible") (quoting *Wheatland Tube Co.*, 161 F.3d at 1369-70.

Gritter Francona seeks to draw upon an analogy between this protest and the cases of *FirstLine Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359, 376 (2011), and *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704 (2008). Both are distinguishable from the case at hand. *FirstLine* involved a protestor whose proposal received thirty-three strengths and no weaknesses while the awardee received one strength and one weakness. *FirstLine*, 100 Fed. Cl. at 376. Here, the only difference identified by the SSA between Gritter Francona and GCA is that Gritter Francona had a higher confidence rating. AR 62-3952 to 3953. The technical ratings were otherwise deemed to be acceptable without any distinguishing factor for either offeror, making it distinct from *FirstLine* where one offeror had much more noticeably demonstrable strengths. *See* AR 62-3940 to 3941; 3943 to 3944. The SSA determined that the price value and other aspects of GCA's technical proposal warranted the award. AR 62-3955. There was not the same blatant disregard for the differences between proposals as there was in *FirsLine*. The SSA's consideration of price does not *per se* convert the procurement to a LPTA approach. Rather, "[e]ven where a solicitation provides that technical criteria are more important than price, an agency must select a lower-priced, lower technically scored proposal if it reasonably decides that the premium associated with selecting the higher-rated proposal is unwarranted." *Mil-Mar Cent. Corp. v. United States*, 111 Fed. Cl. 508, 553 (2013) (alteration omitted) (quoting *Serco Inc. v. United States*, 81 Fed. Cl. 463, 496 (2008)). The solicitation here explicitly provided that price would become more important as "the range of technical merit narrow[ed]." AR 4-69. The SSA documented the differences between GCA and Gritter Francona and stated that he did not find the technical differences and Gritter Francona's more relevant past performance to justify the "27.6% difference" in price. AR 62-3953.

*Femme* is similarly distinguishable. In that case, the source selection decision lacked any detail of the comparison between offerors, which is not the case here. *See Femme*, 83 Fed. Cl. at 767-68. While Gritter Francona may disagree with the level of detail the SSA included, the source selection document is sufficiently detailed to demonstrate a discernible reasoning path. Further, unlike *Femme*, nothing in the SSA's decision manifests an intent to inflate or unfairly emphasize any aspect of the proposals as compared to the others. *See id.* at 768. Here, the proposals were analyzed across *all* offerors. AR 62-3931 to 3955. The SSA adjusted the technical rating of three offerors and similarly adjusted the past performance rating of two offerors. *See* AR 62-3934 to 3935; 3937 to 3938; 3934 to 3941; 3943 to 3944. Gritter Francona merely disagrees with the substance and extent of the SSA's analysis, s*ee generally* Pl.'s Mot., and that is not enough to prove that the procurement was improper.

The SSA determined that GCA represented the best value because of its work force allocation and its lower price. AR 62-3955. It was appropriate for the SSA to take a lower priced offer because it determined that the other offerors' proposals did not justify the premium price for the higher ratings. *See Mil-Mar Cent. Corp.*, 111 Fed. Cl. at 553. The court therefore rejects Gritter Francona's challenge that DHA conducted the procurement in an arbitrary, capricious, or prejudicial manner and that it failed to select the best value offer.

## CONCLUSION

For the foregoing reasons, Gritter Francona's motion for judgment on the administrative record is DENIED, and defendant's and defendant-intervenor's motions for judgment on the administrative record are GRANTED.  Gritter Francona's motion for a permanent injunction is DENIED AS MOOT.

The Clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.


s/ Charles F. Lettow
Charles F. Lettow
Senior Judge